IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMIRAL INDEMNITY COMPANY, as subrogee of INFUSION MANAGEMENT GROUP, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> OTIS ELEVATOR COMPANY, <br><br> Defendant. | No. 20-cv-04597 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Infusion Management Group, Inc. ("Infusion") owns and operates The Signature Room ("Property"), an upscale restaurant on the 95th floor of a 100-story mixed-use skyscraper located at 875 North Michigan Avenue ("Building") in Chicago. Defendant Otis Elevator Company ("Otis") is an elevator installation and maintenance company. Infusion and its insurer, Admiral Indemnity Company ("Admiral," and collectively with Infusion, "Plaintiffs"), allege that on November 16, 2018, one of the passenger elevators in the Building malfunctioned and crashed, preventing customers from accessing the Property. Plaintiffs contend that Otis was negligent in maintaining the elevators. Now before the Court is Otis's motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 14.) For the reasons stated below, the motion is granted.

### BACKGROUND

For purposes of deciding motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff. *See, e.g., Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

As set forth in Plaintiffs' Amended Complaint here, Infusion owns and operates the Property, an upscale restaurant on the 95th floor of the Building. (Am. Compl. ¶ 7, Dkt. No. 12.) The Property's landlord is the John Mutual Life Insurance Company ("Landlord"). (*Id.* ¶ 36.) Infusion's lease requires the Landlord to provide working passenger elevators by which customers access the Property. (*Id.* ¶ 38.) The Building retained Otis to maintain its passenger elevators. (*Id.* ¶¶ 9, 11.) Plaintiffs have not alleged that they held any contractual relationship directly with Otis.

On November 16, 2018, one of the two passenger elevators servicing the Property malfunctioned and fell suddenly and catastrophically, injuring passengers inside. (*Id.* ¶ 16.) That same day, both elevators were shut down by the City of Chicago due to safety concerns and to complete repairs. (*Id.* ¶ 17.) The passenger elevators were not functional for a month, during which time customers were unable to access the Property. (*Id.* ¶ 18.) As a result, Infusion suffered losses of income, unreimbursed costs, and perishable inventory (*i.e.*, spoiled food). (*Id.*)[1] Admiral, as Infusion's insurer, reimbursed Infusion for "loss of business income and additional property damage." (*Id.* ¶¶ 22–23.) Plaintiffs have now filed this lawsuit to recover damages for lost profits and the spoiled food.

Plaintiffs assert three counts against Otis. Count I asserts a negligence claim based on the allegation that Otis negligently installed, inspected, and maintained the passenger elevators. Count II advances a negligence claim under the heading *res ipsa loquitur*, claiming that the passenger elevators were in the sole and exclusive care of Otis and that the elevator malfunction would not have occurred in the absence of Otis's negligence. Finally, Count III asserts a breach of contract

---

[1] Although Plaintiffs' Amended Complaint does not specify what kind of "perishable inventory" spoiled, their response brief clarifies that they are referring to "spoiled and perishable food." (Pls.' Resp. at 11, Dkt. No. 21.) *See Help At Home, Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (explaining that a plaintiff may add facts "by affidavit or brief" in response to motion to dismiss if they are "consistent with the allegations of the complaint.").

claim based on the contention that Plaintiffs are third-party beneficiaries of the Landlord-Otis contract ("Otis Contract") and that Otis breached the contract.

## DISCUSSION

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). In its exercise of diversity jurisdiction, this Court applies state substantive law—in this case, Illinois law—and federal procedural law to its consideration of Plaintiffs' claims. *Charter Oak Fire Ins. Co. v. Hedeen & Companies*, 280 F.3d 730, 735 (7th Cir. 2002). Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### I. Breach of Contract

The Court turns first to Count III. In that count, Plaintiffs contend that Otis breached its contractual duty to safely maintain the elevators and that Plaintiffs are entitled to damages as third-party beneficiaries under the Otis Contract.

3

Under Illinois law, "there is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties. To overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. App. Ct. 1989). "That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009). Instead, "[i]t must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person." *Id.* However, "[i]t is not necessary that a contract for the benefit of a third party identify him by name. The contract may define a third party by description of a class." *Altevogt v. Brinkoetter*, 421 N.E.2d 182, 187 (Ill. 1981).

Along with its motion to dismiss, Otis has attached a copy of what it contends is the Otis Contract. (Def.'s Mot., Ex. A, Otis Contract, Dkt. No. 14.) Generally, this document could be appropriately considered by the Court, as "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). That is the case here. However, Plaintiffs protest that the document attached by Otis has not been authenticated and should not be considered. The Court need not wade into this evidentiary dispute because Plaintiffs have failed to plead a claim adequately whether or not the contract is considered.

If the contract offered by Otis is not considered, Plaintiffs are in the difficult position of trying to plead breach of contract without providing the underlying contract. Plaintiffs allege that Infusion and Admiral are third-party beneficiaries of the Otis Contract (Am. Compl. ¶¶ 39, 42),

4

but because that constitutes an unsupported legal conclusion, it receives no deference from the Court. *See Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988). The only contract language to which Plaintiffs point comes from the lease between Infusion and the Landlord. The lease requires the Landlord to provide passenger elevator service adequate for Infusion's business operations. Plaintiffs contend that because they were entitled to passenger elevator service from the Landlord and the Landlord contracted with Otis to maintain the Building's elevators, Plaintiffs are therefore third-party beneficiaries to the Otis Contract.

But Plaintiffs' allegations suggest, at most, that the Landlord intended for the Otis Contract to benefit Plaintiffs. The bar is higher. For their breach of contract claim to survive, Plaintiffs must allege not just that Otis and the Landlord knew or intended that others would benefit from their agreement, but that the Otis Contract contains something "practically [amounting to] an express declaration" that it "applies to third parties." *Ball Corp.*, 543 N.E.2d at 107. That the Landlord promised passenger elevator service to Infusion does not suggest that Infusion was expressly included as a direct beneficiary of the Otis Contract. Plaintiffs must offer some basis from which to infer that Otis agreed to assume the Landlord's obligations. They have not done so. Thus, Plaintiffs' pleadings "are merely consistent with" Otis's liability and "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

If the contract supplied by Otis is considered as authentic, this Court can conclude as a matter of law that Plaintiffs are not third-party beneficiaries. Under Illinois law, the Court can conclusively interpret contracts as a matter of law in the absence of ambiguous terms. *Lexington Ins. Co. v. Horace Mann Ins. Co.*, 186 F. Supp. 3d 920, 929 (N.D. Ill. 2016) (citing *AMCO Ins. Co. v. Erie Ins. Exch.*, 49 N.E.3d 900, 907 (Ill. App. Ct. 2016)).

Plaintiffs contend that they are express, direct beneficiaries of the Otis Contract (to which they are not parties) by pointing to the following language:

**1.8 CONTRACTOR COMPLIANCE WITH LAWS**

A. Contractor shall take all necessary precautions for the safety of and provide all necessary protection to prevent damage, injury or loss to: 1) all employees at the Property and all other persons (including without limitation, employees, agents, residents and invitees of Owner) who may be affected by the actions or inactions of [the Defendant's] employees, agents and subcontractors thereby . . . .

(Otis Contract § 1.8(A).) Plaintiffs advance two theories for how this language renders them third-party beneficiaries. First, they assert that because Infusion has a lease with the Landlord in which the term "owner" is used to describe them, the use of the term "Owner" in the Otis Contract refers to them as well. Second, Plaintiffs contend that "Owner" refers to the Building's owner and that they are "residents and invitees of Owner." Under the interpretations urged by Plaintiffs, the Otis Contract establishes a class of intended beneficiaries—the residents and invitees of the Owner—who are entitled to enforce the contract.

Plaintiffs, however, incorrectly assume that anyone who happens to benefit from a contractual provision is thereby a directly intended beneficiary, as required to confer third-party beneficiary status. The provision, as suggested by the section title "CONTRACTOR COMPLIANCE WITH LAWS," does not state explicitly or implicitly that the contract was undertaken for the direct benefit of Plaintiffs. Instead, the Landlord is the direct and intended beneficiary of the provision: it benefits from Otis's efforts to protect its tenants and visitors. If Plaintiffs were correct in their interpretation, then any visitor to or tenant of the Building would be a third-party beneficiary entitled to enforce the Otis Contract, a result inconsistent with the presumption under Illinois law that a contract's provisions do not apply to third parties. Illinois law requires that third-party beneficiaries be intended, direct beneficiaries of a contract and that "the contract itself must affirmatively make this intention clear." *Waterford Condo. Ass'n v.*

*Dunbar Corp.*, 432 N.E.2d 1009, 1011 (Ill. App. Ct. 1982). The Otis Contract contains no language strong enough to establish intended and direct third-party beneficiaries.

The parties also dispute whether an exclusion for indirect, special, or consequential damages under the Otis Contract applies to Plaintiffs' alleged losses. But the Court need not reach that issue because Plaintiffs have not plausibly alleged that they are appropriate parties to assert a breach of contract claim based on the Otis Contract. Count III is thus dismissed.

**II.     Negligence**

In Counts I and II, Plaintiffs assert that Otis negligently harmed its business by (1) preventing customers from accessing the restaurant, and (2) causing perishable inventory to spoil.[2] Otis contends that any such tort claims must be dismissed as barred by the *Moorman* doctrine (also known as the economic loss rule), which prevents recovery in tort for solely economic losses.[3]

In Illinois law, the economic loss rule provides that purely economic losses are generally unrecoverable in tort. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997). "Economic loss" encompasses "consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982). The rule applies even if the would-be plaintiff is party to a contract with the defendant. "A plaintiff seeking

---

[2] The parties dispute whether Admiral can properly bring a claim against Otis to recover for Infusion's unreimbursed perishable inventory. Plaintiffs contend that because Admiral is a subrogee of Infusion, all of their claims fuse together for purposes of this action. The Court does not resolve this issue because Plaintiffs have failed to plausibly assert any viable claims.

[3] Plaintiffs assert separate claims in their Amended Complaint for negligence (Count I) and "*res ipsa loquitur*" (Count III). However, Plaintiffs' *res ipsa loquitur* claim is redundant of their negligence claim: *res ipsa loquitur* is a rule of evidence for inferring negligence and not itself a distinct claim. *Darrough v. Glendale Heights Cmty. Hosp.*, 600 N.E.2d 1248, 1251 (Ill. App. Ct. 1992). Further, the dispositive question here is whether Plaintiffs are barred from recovering for their losses in tort—an issue equally applicable to any claim for recovery in tort that Plaintiffs could make. Thus, the Court addresses Counts I and II together.

to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986).

For example, in *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 327 (Ill. 1982), the Illinois Supreme Court explained that the plaintiff homeowner could not recover in tort for faulty construction of a home by a defendant builder. The court noted that the losses were purely economic because they were based on disappointed commercial expectations:

> This is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture. The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for. The complained-of economic losses are not recoverable under a negligence theory.

*Id.* at 327. Similarly, in *Chicago Flood*, the Illinois Supreme Court distinguished between claims involving property loss (recoverable in tort) and those involving only disappointed commercial expectations (not recoverable in tort). *Chicago Flood*, 680 N.E.2d at 275. Specifically, the court held that the plaintiffs could recover in tort for perishable inventory that spoiled because interrupted electrical service stopped them from preserving it (property damage), while noting that plaintiffs could not have recovered for the loss of continuous electrical service itself (disappointed commercial expectation). *Id.* at 276.

### A. Business Income

The economic loss rule generally does not apply to property damage. Plaintiffs assert that they have suffered property damage because they had a property right of ingress and egress to the Property. They contend that this right was impaired, and their property was therefore "damaged," due to the elevator crash that Otis negligently caused. Plaintiffs further maintain that this loss was

not purely economic, and that the economic loss rule is therefore inapplicable. Plaintiffs seek damages for their lost business income and their spoiled perishable inventory under this theory.

This case can be fairly categorized as an "access" case, where "plaintiffs seek compensation for profits lost because the alleged tort prevented customers from reaching their businesses." *In re StarLink Corn Prod. Liab. Litig.*, 212 F. Supp. 2d 828, 840 (N.D. Ill. 2002). In such cases, losses attributed to impeded access to a business are typically nonrecoverable in tort under the economic loss rule. *Id.* For instance, in *Dundee Cement Co. v. Chemical Laboratories, Inc.*, 712 F.2d 1166 (7th Cir. 1983), a cement plant owner filed suit against the driver and owner of a tanker truck that overturned and blocked the cement plant's customers from accessing the plant. The Seventh Circuit acknowledged that the accident directly prevented customers from accessing the plant and caused the cement company to lose business income. *Id.* at 1170. Nevertheless, it concluded that the lost business income constituted an economic loss and denied recovery because "a plaintiff cannot recover purely economic losses in a negligence action." *Id.* In other words, the cement plant had suffered an economic loss even though there was a physical impairment of access to its property. This result mirrors the holding in *Chicago Flood* barring tort claims by plaintiffs whose properties, though untouched by the flood, were inaccessible to customers due to the flooding. *Chicago Flood*, 680 N.E.2d at 276. Damages resulting from inability to access the property were classified as economic losses.

Here, Plaintiffs' claims are analogous to the unsuccessful claims of the plaintiffs in *Dundee Cement*. Plaintiffs' customers were unable to access the Property because of an accident that, as alleged, was negligently caused by Otis. As a result, Plaintiffs lost business income. But "[t]he award of lost profits is allowed only . . . when the defendant has intentionally harmed the plaintiff or when the plaintiff or his property is ***physically*** injured." *Dundee Cement*, 712 F.2d at

9

1170 (emphasis added). Had Plaintiffs alleged that the elevator crashed into and destroyed their property, their damages would not be so attenuated from the incident and recovery would be possible. Instead, Plaintiffs allege that the elevator crash impeded their customers' access to the Property, causing losses that can only be categorized as purely economic.

Plaintiffs point to the existence of elevator provisions in the lease agreement between the Landlord and Infusion as evidencing their infringed property rights. They assert that they held a "property right" in the use of the elevators damaged by Otis's alleged negligence. But Plaintiffs do not explain how a contractual right they may hold against the Landlord—which is not a party to this case—has any significance for their tort claims against Otis. Nor do they explain how any "damage" to their alleged "property interest" in the elevator allows them to recover for economic losses they allege in this case.

Moreover, Plaintiffs do not cite any case law allowing a plaintiff to recover for an economic loss caused by an access impairment. Instead, Plaintiffs compare their situation to a trespass, citing *Lyons v. State Farm Fire & Casualty Co.*, 811 N.E.2d 718 (Ill. App. Ct. 2004). The plaintiff in *Lyons*, however, sought damages for the physical trespass to the defendant's levees being built on the plaintiff's property. There, the plaintiff suffered a "pure injury to the land," not just the less tangible impairment of customers' access to the property. *Id.* at 725. A neighbor building unwanted structures on one's land is unambiguously property damage because the land itself is physically damaged by the intrusion. Thus, even if the elevator crash could be compared to a trespass, Plaintiffs have not suffered any physical damage analogous to that in *Lyons*. The consistent application of the economic loss rule to bar tort recovery of economic losses in access cases demonstrates that Illinois law does not treat impairments like the incident at issue here as property damage.

Finally, Plaintiffs plead that Admiral reimbursed Infusion for "additional property damage." (Am. Compl. ¶ 22.) But this allegation could refer to anything from a chipped plate to a caved-in ceiling, and therefore does not by itself help Plaintiffs to clear the plausibility bar. Ultimately, Plaintiffs' lost business income can only plausibly be categorized as economic loss barred from recovery in tort by Illinois law. Thus, Plaintiffs have failed to state a claim against Otis for recovery of their lost business income.

### B.    Perishable Inventory

Plaintiffs also contend that their perishable inventory spoiled because of the elevator crash. They maintain that this loss constitutes "property damage" pursuant to *Chicago Flood*, in which the plaintiffs recovered in tort for loss of perishable inventory due to interrupted electrical service. *Chicago Flood*, 680 N.E.2d at 276. There, the perishable inventory was not damaged directly by the flood. *Id.* Instead, the flood interrupted the plaintiffs' electrical service, which prevented them from preserving the perishable inventory. *Id.*

Applying *Chicago Flood*, an Illinois appellate court concluded that damages to perishable inventory are recoverable in tort when caused by electricity outages:

> We first note that plaintiff alleges food spoilage. In [*Chicago Flood*], our supreme court expressly held: "The trial court ruled that the economic loss rule does not bar recovery in tort for those plaintiffs who lost perishable inventory as a result of interrupted electrical service. The appellate court affirmed. We agree." Thus, in accordance with the supreme court's clear holding, this portion of plaintiff's claim is not barred by *Moorman*.

*Village of Deerfield v. Commonwealth Edison Co.*, 929 N.E.2d 1, 11 (Ill. App. Ct. 2009), *overruled on other grounds by Sheffler v. Commonwealth Edison Co.*, 955 N.E.2d 1110 (Ill. 2011) (quoting *Chicago Flood*, 680 N.E.2d at 276). Plaintiffs suggest that *Village of Deerfield* and *Chicago Flood* establish a universal exception to the economic loss rule for lost perishable inventory. But the principle to be drawn from those cases is narrower: damages to perishable

11

inventory caused by an impaired ability to preserve that inventory are exempted from the rule.

Citing a law review article, *Moorman* describes economic loss as "damages for inadequate value, costs of repair[,] and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman*, 435 N.E.2d at 449 (quoting Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966)). Notably, later in the cited article, the author delineates the line between economic loss and property loss:

> If A manufactures paste which it sells to B who uses it to cement shoes which he sells to C, a failure of the paste to properly adhere causes economic loss if it does not physically damage the shoes but merely renders them unsaleable; on the other hand, a defect in the paste which physically damages the shoes causes property loss.

Note at 918. Under this distinction, physical damage to a product constitutes property loss, but a defect that merely renders a product unsaleable causes only economic loss.

In the present case, the harm to the perishable inventory does not constitute property damage because it is too attenuated from the elevator accident. In *Chicago Flood* and *Village of Deerfield*, the plaintiffs suffered damage to their perishable inventories because an accident prevented them from preserving the goods. But in this case, Plaintiffs make no such allegations. Instead, the only plausible inference from the pleadings is that the inventory expired because Plaintiffs were unable to *use* it—that is, to prepare the inventory or serve it to customers—before it perished because the Property was closed as a result of the accident. As such, the damage sustained by Plaintiffs constitutes economic loss and is barred from recovery in tort by the economic loss rule.

Plaintiffs also claim that their loss of perishable inventory is exempt from the economic loss rule under the "sudden or dangerous occurrence" exception to the doctrine, which exempts "damage, ***i.e., personal injury or property damage***, resulting from a sudden or dangerous

12

occurrence." *Chicago Flood*, 680 N.E.2d at 275. Plaintiffs contend that because the elevator crash was sudden and dangerous, the losses stemming from the crash, including the spoiled food, are exempt from *Moorman* and may be recovered. But *Chicago Flood* forecloses this argument. The Illinois Supreme Court there held that a sudden and calamitous event alone does not lift the economic loss rule. *Id.* Instead, the event must be "**coupled with** personal injury or property damage . . . [T]he economic loss rule applies even to plaintiffs who have incurred damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes." *Id.* (emphasis added). Here, Plaintiffs have not pleaded that the elevator crash was sufficiently coupled with the spoilage of Infusion's perishable inventory; they have not, for example, pleaded that the crash made the inventory inaccessible to Infusion or caused Infusion's refrigeration systems to fail. Thus, the gradual deterioration of Plaintiffs' perishable inventory is exactly the kind of loss for which *Chicago Flood* bars recovery.

    **C.**  **Extracontractual Duties**

Plaintiffs' final argument is that the economic loss rule therefore does not apply because Otis held extracontractual duties towards Plaintiffs.

Under Illinois law, "[w]hether a duty exists is a question of law to be determined by the court." *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018). The extracontractual duty exception to the economic loss rule applies where "a duty arises outside of the contract." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994). However, Illinois courts have applied this rule only to duties held by a "narrow range of professionals," such as attorneys and accountants. *Dahm v. First Am. Title Ins. Co.*, No. 06 C 5031, 2008 WL 1701901, at *3 (N.D. Ill. Apr. 9, 2008). Extracontractual duties can also be rooted in statute. *See Mercola v. Abdou*, 223 F. Supp. 3d 720, 730 (N.D. Ill. 2016) (Illinois statute

requiring insurance brokers to exercise "ordinary care and skill" established extracontractual duty).

Plaintiffs assert that Otis owes them extracontractual duties based on the City of Chicago Department of Buildings Rules and Regulations for Elevator Inspections, ASME Safety Code 17.1, and several other laws and standards referenced in the Otis Contract. But Plaintiffs have not pointed to any specific language in these laws and standards that would create an extracontractual duty. As it stands, their arguments are too cursory regarding the source of the alleged duties for the Court to credit them. *See Hanrahan v. Thieret*, 933 F.2d 1328, 1335 n.13 (7th Cir. 1991) (Courts need not consider at length arguments raised only "in a very opaque manner" or without explanation). Further, to qualify for the extracontractual duty exception, such language must imply "economic loss caused by breach of a professional duty that, because of its intangible nature, cannot be measured in contract terms." *Martusciello v. JDS Homes, Inc.*, 838 N.E.2d 9, 13 (Ill. App. Ct. 2005). This means something like the fiduciary relationship between attorneys and clients or the duty of "ordinary care and skill" Illinois imposes on insurance brokers in the course of their client services. *Mercola*, 223 F. Supp. 3d at 730. It is unlikely that elevator maintenance standards reflect similarly intangible fiduciary responsibilities. Accordingly, Plaintiffs have failed again to avoid the *Moorman* doctrine based on a theory of extracontractual duties.

## CONCLUSION

For the reasons stated above, Otis's motion to dismiss (Dkt. No. 14) is granted. The Court dismisses Plaintiffs' complaint without prejudice. Plaintiff are granted leave to file an amended complaint that states a viable claim within twenty-one days. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510, 519 (7th Cir. 2015) (explaining that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least

one opportunity to try to amend her complaint before the entire action is dismissed"). If Plaintiffs decline to do so, the case will be dismissed with prejudice and final judgment entered by the Court.

ENTERED:

Dated: September 22, 2021

_____
Andrea R. Wood
United States District Judge